| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THOMAS BRUCE PARKER, | ) | **Bankruptcy Case Number** |
| | ) | 04-30593 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | **ORDER** |
| | ) | |
| RICHARD M MITCHELL, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Appellee/Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| THEODORE GREGG PARKER, | ) | |
| | ) | **Adversary Proceeding Number** |
| Appellant/Defendant, | ) | 04-3051 |
| | ) | |
| and | ) | |
| | ) | |
| THOMAS BRUCE PARKER; | ) | |
| MARGARET JUNE PARKER | ) | |
| SCHLAPHOHL; and BETTY JEANNE | ) | |
| PARKER, | ) | |
| | ) | |
| Interested Parties/Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on an appeal noticed August 18, 2008, by appellant Theodore Gregg Parker, a defendant or interested party in the bankruptcy proceedings below. Appellant is proceeding *pro se*. The appeal was transferred to the undersigned March 17, 2011. See 28 U.S.C. 158(a). Having carefully considered the briefs and the materials submitted and referenced, the court enters the following findings, conclusions, and Order affirming in part and reversing in part the determination of the bankruptcy court.

## FINDINGS AND CONCLUSIONS

### I.     Procedural History

On August 18, 2008, the appellant filed a Notice of Appeal in this court seeking to appeal the July 8, 2008, decision of Honorable J. Craig Whitley, Chief United States Bankruptcy Judge. Notice of Appeal (#1).  The district court initially dismissed the appeal inasmuch as appellant did not file a copy of an Order from the bankruptcy court extending the time within which he could appeal from that decision.   Order (#2) (Reidinger, J.).  On reconsideration, this court vacated the dismissal an allowed the appeal to proceed, with the admonition that

> language contained in the filings before this Court discloses that the Appellant seeks to relitigate issues which have been decided as long ago as 2006. The Appellant is cautioned that the issues presented on this appeal must be limited to the order from which appeal is taken.

Order (#10) (Reidinger, J.), at 9.

### II.    Issue Presented

The issue presented is whether or not the bankruptcy court erred in its July 8, 2008, Order determining the proper distribution of the net proceeds to the respective interest holders from the sale of real property.

### III.   Standard of Review

This is a core proceeding. Congress has mandated in 28 U.S.C. § 157(c)(1) that district courts conduct *de novo* review only in non-core bankruptcy proceedings.  An Order concerning the proper distribution of net proceeds from the sale of real property is a core proceedings under Section 157(b)(2)(n)&(o).

As a core proceeding, the bankruptcy court's findings of fact will not be overturned on appeal unless they are clearly erroneous, Fed.R.Bank.P. 8013, and due regard will be given to the bankruptcy court's ability to evaluate the credibility of witnesses. Id.; In re Biondo, 180 F.3d 126, 130 (4th Cir.1999). The conclusions of law of the bankruptcy court are, however, reviewed *de novo*. Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir.2004).

## III. Factual Background

Based on a review of the bankruptcy file and the record on appeal, the bankruptcy court's findings of fact are not, with one exception discussed *infra*, clearly erroneous. The court provides the following procedural and factual summary to aid review.

### A. Procedural History of the Chapter 7 Petition of Thomas Bruce Parker

On February 19, 2004, Thomas Bruce Parker (hereinafter "debtor"), filed a voluntary Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division. Prior to the filing date, debtor inherited both a life estate and one-fourth remainder interest in his mother's residence; his three siblings each held a one-fourth remainder interest. Appellant Theodore Gregg Parker is one of those siblings.

On April 1, 2004, the Trustee, Richard M. Mitchell (the "Appellee") filed an adversary proceeding (BR 04-3051) against the defendants (the "Parker siblings"), to sell the real property in its entirety and divide the proceeds among the interest holders. On May 15, 2005, the debtor filed a Motion to Amend Exemptions, in an attempt to claim a homestead exemption in the residence. On May 18, 2004, the Bankruptcy Court ordered that the debtor be allowed to amend his exemptions; however, he never did so. The debtor was also ordered to turn over $3,571.11 in now non-exempt funds to the Appellee, which was also never done.

On September 14, 2006, the bankruptcy court heard the parties' motions for summary judgment and granted the Appellee partial summary judgment. On September 20, 2006, and

prior to the entry of the written order, appellant herein filed a premature Notice of Appeal with this court. In re Parker, 3:06cv480 (W.D.N.C. Sept. 20, 2006) (hereinafter "First Appeal"). On November 22, 2006, the Bankruptcy Court entered its written Order from the September 14, 2006, hearing, finding that: (1) the bankruptcy estate's interests in the property consisted of a life estate and a one-fourth remainder interest; (2) the interests of the debtor's three siblings were found to be one-fourth remainder interests each. The Order further authorized the appellee to sell the real property at issue in its entirety pursuant to 11 U.S.C. § 363(f)(4).

On December 4, 2006, appellant filed an amended Notice of Appeal appealing the bankruptcy court's November 22, 2006, Order, and filed a Motion to Stay the Order of November 22, 2006. On February 20, 2007, the bankruptcy court denied the Motion to Stay. On April 16, 2007, this court denied the First Appeal and affirmed the Bankruptcy Court's November 22, 2006, Order, authorizing appellee to sell the real property pursuant to 11 U.S.C. § 363(f)(4). On April 16,2007, appellant filed a Notice of Appeal of this Court's April 16, 2007, decision denying the First Appeal to the United States Court of Appeals for the Fourth Circuit. In re Parker, Case No. 07-1371 (4th Cir. April 16, 2007).

On February 28, 2007, appellant appealed the denial of the Motion to Stay. In re Parker, 3:07-CV-00095 (W.D.N.C. Feb. 20, 2007) (hereinafter "Second Appeal"). On April 5, 2007, this court denied the appellant's Second Appeal and the appellant did not appeal such decision.

On May 31 , 2007, the bankruptcy court entered an Order sanctioning appellant when he interfered with the trustee's administration of the real property. On June 22, 2007, appellant filed a Notice of Appeal appealing the Order for sanctions to this court. In re

<u>Parker</u>, 3:07cv247 (W.D.N.C. June 22, 2007)(hereinafter "Third Appeal"). On August 8, 2007, appellant voluntarily dismissed the Third Appeal.

On September 4, 2007, the bankruptcy court entered an Order approving the trustee's proposed sale of the real property for the sum of $130,010.00. On September 24, 2007, appellee closed the sale of the real property.

On January 3, 2008, the Court of Appeals dismissed appellant's appeal of the First Appeal as moot pursuant to 11 U.S.C. § 363(m). On January 14, 2008, appellant petitioned the Court of Appeals for a rehearing and a rehearing *en banc*. On March 11, 2008, appellant's petitions for rehearing and rehearing *en banc* were denied by the Court of Appeals.

On February 5, 2008, the trial of the adversary proceeding was held in the bankruptcy court. On July 8, 2008, the bankruptcy court issued its Findings of Fact, Conclusions of Law and Order from the bench trial. On August 18, 2008, appellant filed a Notice of Appeal with this court appealing the bankruptcy court's July 8, 20008, Order. <u>In re Parker</u>, 3:08-CV-00373 (W.D.N.C. Aug. 18, 2008) (hereinafter "Fourth Appeal" or "this appeal").

**B.    Summary of Facts**

**1.    The Debtor's Interest in the Residence**

Prior to filing the bankruptcy petition, debtor's mother (hereinafter, at times, "Ms. Parker") passed away leaving a residence located in Charlotte, North Carolina (hereinafter the "home"). Ms. Parker left a holographic will, which devised her home, as follows:

> To my son Thomas Bruce Parker for his use and benefit as a home. At such time as Bruce no longer wishes to live in the home, then I direct that the property be sold and the proceeds divided equally among my four children who are Margaret June Parker Schlaphohl ("Margaret"), Betty Jeanne Parker ("Betty"), Theodore Gregg Parker [Appellant] and Thomas Bruce Parker.

At the time he filed the underlying petition, debtor resided at the devised home. In his bankruptcy schedules, debtor claimed his interest in such property was a one-fourth interest in Ms. Parker's "estate," rather than in the residence itself. The trustee determined, however, that the debtor's interest was a life estate coupled with a one-fourth remainder interest and that his three siblings each had a one-fourth remainder interest. Since these interests were part of the debtor's bankruptcy estate, the trustee determined that the siblings either needed to buyout the debtor's interest or that the bankruptcy court needed to grant him leave to sell the property in its entirety and split the proceeds among the various interests.

**2. Debtor Disobeys the Order of the Bankruptcy Court by Refusing to Vacate the Home – Appellant Held in Contempt for Interfering with the Sale**

The bankruptcy court directed the sale of the home. Despite the Bankruptcy Court's November 11, 2006, Order requiring him to vacate the premises within twenty days and permitting the trustee to sell the property pursuant to 11 U.S.C. § 363(f)(4), debtor continued to reside at the home. On May 7, 2007, an employee of the trustee met a locksmith at the residence in order to change the locks and secure the property for sale. The debtor, who was still living in the residence, contacted appellant, who called the police. On June 14, 2007, the bankruptcy court found appellant in contempt of court and appellant was enjoined from further obstructing the sale of the residence.

**3. The Residence is Sold**

The trustee sold the residence on September 4, 2007, for $130,010.00. The net proceeds of the sale were $100,501.23 after closing costs, taxes, and other fees associated with the sale.

**IV.    Discussion**

    **A.    Review of Collateral Issues Raised in the Fourth Appeal**

        **1.    Whether the Trustee Should Have Been Authorized to Sell the Home**

Appellant first takes issue with the decision of the bankruptcy court authorizing the trustee to sell the home.  On September 11, 2010, in permitting this Fourth Appeal to proceed, this court instructed appellant that "issues presented on this appeal must be limited to the [O]rder from which appeal is taken." Order (#10), at 9 (Reidinger, J.).  Thus, this appeal is limited to the bankruptcy court's July 08, 2008, Order.

The bankruptcy court's decision allowing the trustee to sell the home was not part of such Order, but was part of an earlier decision previously appealed by appellant. Specifically, in the First Appeal, this court affirmed the bankruptcy court's order of November 22, 2006, which authorized the Appellee to sell the home.  This court held in affirming the Order of the bankruptcy court, as follows:

> In this case, the only issue raised by the appellant that could defeat the court's order to sell would be if the debtor had disclaimed all interests in his mother's estate prior to filing for bankruptcy. In North Carolina, a person who succeeds to a property interest as a heir can renounce their interest by filing a written instrument under the provisions of the North Carolina General Statutes. N.C.G.S.A. §31B-1(a). Here, although the appellant argues that the debtor has renounced his interest, he gives no evidence of such an action. . . . Since the appellant shows no evidence that the debtor intended to or did revoke his interest in the estate, the order to sell is proper.

First Appeal, Order (#7), at 3 (Mullen, J.). No stay of the November 22, 2006, Order was ever entered.

On September 4, 2007, the property in question was sold by the trustee. On January 3, 2008, the Court of Appeals dismissed the appeal of the First Appeal as moot pursuant to Bankruptcy Code Section 363(m), which provides that when a sale to a third party purchaser, who acts in good faith occurs, pursuant to Section 363(b) or Section 363(c), it will not be

reversed or modified. The decision of the Court of Appeals finally determined this issue, as appellant recognizes in his brief: "[t]his sale, though improper is final."

Despite such concession, the primary focus of this appeal is that the bankruptcy court erred in allowing the trustee to sell the home. Finding as a matter of law that a final determination has been made as to such issue, the court will dismiss this aspect of the appeal as moot.

### 2. The Bankruptcy Court's Determination of the Respective Interests of the Debtor and Defendants

The November 22, 2006, Order of the Bankruptcy Court not only authorized the sale, it determined the interests of the various parties in the real property. The debtor's bankruptcy estate was determined to hold a life estate plus a one-fourth remainder interest in the real property and that each of the siblings, including appellant, held a one-fourth remainder interest.

The trustee argues that such determination as to the respective interests of debtor and the defendant was made final in the First Appeal. Brief of Appellee, at p. 7. While it is arguable that appellant raised such in his Amended Notice of Appeal, see First Appeal (#3), review of the Order of this court dismissing the First Appeal does not reveal that the issue was specifically addressed. Instead, this court held that "debtor's interest is in bona fide dispute, and therefore, a sale is proper under 11 U.S.C. 363(f)(4)." Order (#7), at p.3 (Mullen, J.).

To the extent such issue has not been taken up and may not be moot, the court has, in an abundance of caution, conducted a *de novo* review of Judge Whitley's November 22, 2006, legal determination concerning the respective interests of Ms. Parker's heirs in the home. The will devising the home provided as follows:

> I devise my home located at 4100 North Sharon-Amity Road, Charlotte, North Carolina, to my son Thomas Bruce Parker for his use and benefit as a home. At such time as Bruce no longer wishes to live in the home, then I direct that the property be sold and the proceeds divided equally among my four children who are Margaret June Parker Schlaphohl ("Margaret"), Betty Jeanne Parker ("Betty"), Theodore Gregg Parker and Thomas Bruce Parker.

Holographic Will and Last Testament, Re: Margaret Gregg Parker ¶ III.

Judge Whitley first determined that Ms. Parker devised to debtor a life estate in the home. In accordance with well-settled law, a life estate is an estate in land, vesting the holder with the right to use and possess the property during his lifetime. Brinkley v. Day, 88 N.C. App. 101, 103 (1987). North Carolina law requires no particular words of conveyance to create a life estate. Keener v. Korn, 46 N.C.App. 214, *disc. rev. denied*, 301 N.C. 92 (1980). Even wills that make reference to a party's continued use of property, rather than the term of his or her life, have been held to create valid life estate. Brinkley, 88 N.C.App. at 103. This court's review of the will and applicable North Carolina law leads it to conclude, as did Judge Whitney, that a life estate in the home was conveyed to debtor. In re Estate of Heffner, 61 N.C.App. 646, *disc. rev. denied*, 308 N.C. 677 (1983). Further, review of the record reveals no evidence that debtor renounced his interest in the life estate before seeking protection in bankruptcy. After conducting a *de novo* review of such determination of law, the court affirms Judge Whitley's legal finding concerning North Carolina law and what was conveyed in Ms. Parker's will as a matter of law.

Judge Whitley next determined that the will conveyed to all four siblings one-fourth, indefeasibly vested, co-remainder interests in the home. Such determination is both consistent with the language of the will, supra, and North Carolina law. See Central Carolina Bank & Trust Co. v. Bass, 265 N.C. 218, 239 (1965). After conducting a *de novo* review of such determination of law, the court affirms this aspect of Judge Whitley's legal determination.

The court, therefore, affirms the determination of the bankruptcy court concerning the respective ownership interests in the home under the will of Ms. Parker.

### 3. Abandonment of the Property by the Trustee

The appellant further contends that the trustee has abandoned his rights to the debtor's property because he never separately marketed the debtor's specific interest in the property, which was a life estate plus one-fourth remainder interest. The Bankruptcy Code provides for abandonment of bankruptcy estate property in 11 U.S.C. § 554; however, appellant has made absolutely no showing under Section 554 that the trustee has abandoned such property. Indeed, review of the bankruptcy proceedings reveals that the Trustee has actually sold all present and future interest in the property and is retaining the funds on behalf of the estate pending resolution of this appeal.

Appellant has cited the court to no provision of the Bankruptcy Code or any case law that would require the trustee to have sold only the debtor's interest; rather, it appears that the trustee has acted in full compliance with federal law and Judge Whitley's Order by selling all interests in the property, a methodology which clearly maximizes return not just for the estate, but for the co-tenants in the remainder. One significant policy of the Bankruptcy Code is to maximize the value of the bankruptcy estate. Toibb v. Radloff, 501 U.S. 157, 163 (1991).

This court recognizes, however, that under North Carolina law "a partition in kind, if it can be fairly accomplished, is always favored over a sale, since this does not compel a person to sell his property against his will." Butler v. Weisler, 23 N.C.App. 233, 238 (1974) (*citing* Brown v. Boger, 263 N.C. 248, 256 (1965)). "The physical difficulty of division is only a circumstance for the consideration of the court." Id. In this case, the obvious benefit to the bankruptcy estate and all owners was furthered by a fee simple sale; clearly, a modest

family home owned by four people with varying present and future interests could not be physically partitioned. While it is conceivable that debtors present and future possessory interests could have been sold, there is little doubt but that such a sale would not have maximized the value to the bankruptcy estate. Toibb, supra.

Finding that no showing has been made of any abandonment and that the legal premise upon which such issue was raised is unfounded as a matter of law, the court will dismiss this aspect of the appeal as it is unsupported by appellant. To the extent appellant seeks to challenge the sale in such argument, the sale is not appealable as a final determination has been reached as to such issue in the First Appeal.

## 4. Appellant Not Allowed to Match the Highest Bid

Appellant next argues that the debtor and appellant's rights have been violated because they were not allowed to match the highest bid during the sale of the property. The court will not consider appellant's argument made on behalf of the debtor as he has not appealed and appellant lacks perceivable standing to bring any such claim.

The court has, however, construed this argument as a challenge to the validity of the sale. Further, appellant neither filed an objection to the trustee's Motion to Approve the Sale nor appealed the bankruptcy court's Order Approving the Sale entered on September 4, 2007. Again, the sale is not appealable as the sale is final and review has been exhausted as to such issue in the First Appeal.

## 5. Distribution From the Sale

Appellant also complains that the trustee has not made distributions in accordance with the bankruptcy court's July 8, 2008, Order. In response, the trustee has shown that he has not distributed the proceeds due to appellant's appeals. In particular, the trustee argues that this appeal challenges the very Order under which appellant demands distribution.

Because this argument relates to events occurring after the entry of the Order now on appeal, the contention is not within the scope of this appeal and will be denied as it is non-justiciable.

**B.    Review of Issues Arising from the July 8, 2008, Order**

**1.    Denial of Appellant's Claimed Administrative Expenses**

The court will now consider issues that appear related to the July 8, 2008, from which appellant lodged this appeal.   Appellant first contends that  claimed administrative expenses in the amount of $21,190.28 at trial for mortgage payments, electric bills, water/sewer bills, gas bills, pest control bills, miscellaneous repairs, and garbage disposal.  It is undisputed that these payments arose post-petition; however, it is equally undisputed that the trustee never solicited or approved payment of these bills from the appellant.   In its Order, the bankruptcy court denied administrative expense priority and appellant appeals such determination.

A claimant is entitled to administrative expense priority for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1).  In order to be an actual and necessary administrative expense, a claimant must prove

    (1)    that the claim arose "out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee)"; and

    (2)    the transaction benefits the bankruptcy estate.

See In re Stewart Foods, Inc., 64 F.3d 141,145 n. 2 (4th Cir. 1995) (citation omitted). Furthermore, administrative expenses must be approved by the court *prior* to the claimant expending funds. In re Beale, 358 B.R. 744 (Bankr. N.D. Ill. 2006).

In this case, the claimed administrative expenses in the amount of $21,190.28 meet one only criterion, that they were post-petition.  Appellant has shown no factual error as he can point to no evidence that the trustee ever solicited payment of these bills that such expenses were  pre-approved by the bankruptcy court, or that these expenses were  necessary

and beneficial to the bankruptcy estate. Instead, it appears that such expenses were incurred by appellant in furtherance of his brother's holdover in the home, which was in violation of the bankruptcy court's Order that debtor vacate the premises. The second prong of the Stewart test is also not met.

This court cannot find that the bankruptcy court erred factually or legally when it denied appellant administrative expenses or administrative expense priority as such decision fully comported with federal law. See In re Stewart Foods, Inc., supra. (Appellants' arguments concerning the equitable award of expenses allowed by the bankruptcy court will be dealt with separately below.) The court, therefore, affirms the determination of the bankruptcy court concerning appellant's claimed administrative expenses as such determination is consistent with current law and based on factual determinations that are not clearly erroneous.

## 2. Correct Amount of Distributions Based on Ownership Interests

Appellant next contends that the bankruptcy court erred in its valuation of debtor's life estate. The focus of such argument is the bankruptcy court's use of North Carolina's mortality tables concerning debtor's life expectancy, to wit, appellant contends that such tables should not have been used and that debtor's actual poor health should have been considered. Obviously, such a method of valuation would have enured to the benefit of the appellant as the shorter the life estate, the greater value of the remainder.

The court has carefully considered the bankruptcy court's valuation of the debtor's life estate and finds it to be wholly consistent with North Carolina law concerning valuation of life estates. The relative value of a life estate and the remainder interests after the sale of real property is determined by applying the statutory formula provided in Chapters 8-46 and 8-47 of the North Carolina General Statutes. Thompson v. Avery County, 219 N.C. 405

(1939).  While Appellant argues that the mortality tables are generally used for tax purposes and should not be used for valuation of a life estate, the very language of the statute requires use of such tables when a court values a life interest.   N.C.Gen.Stat. § 8-47 (specifically referencing a "life interest in land").  Chapter 8-46 does, however, provide as follows:

> the table hereto appended shall be received in all courts and by all persons having power to determine litigation, as evidence, with other evidence as to the health, constitution and habits of the person, of such expectancy . . . .

N.C.Gen.Stat. § 8-46.

At trial, appellant offered his own opinions as to the health of debtor, but presented no competent evidence to prove that the life expectancy in the statutes should be adjusted. Specifically, appellant neither presented expert actuarial testimony about what the debtor's life expectancy might be nor did he present any competent medical opinions or medical records to back up his own self-serving claims of debtor's poor health.  Simply put, the bankruptcy court had before it no competent evidence other than that contained in the mortality tables from which it could have reliably predicted what effect, if any, the debtor's "health, constitution and habits" had on his life expectancy.  Id.

As a matter of law, the bankruptcy court correctly applied North Carolina law in determining debtor's life expectancy.  While the bankruptcy court clearly recognized that Chapter 8-46 allowed such number to be adjusted based on other evidence, it is clear that the bankruptcy court found appellant's evidence either insufficient or not credible.  See Order of July 8, 2008, at p. 12.   Further, the bankruptcy court explained its decision not to give weight to such evidence:

> First, there is no proof in the record apart from the siblings' parole, lay testimony to substantiate the alleged medical condition. Nor is there any competent evidence that would reliably predict the effects of Bruce's [debtor's] alleged condition on his expected life span.

> Second, and as noted above, the bankruptcy estate's interests in the residence are determined as of the filing date, not some four years later when Bruce [debtor] attempted suicide.

Order of July 8, 2008, at f.n. 4. The Court of Appeals has held that "[d]eference to the bankruptcy court's findings is particularly appropriate when . . . the bankruptcy court presided over a bench trial in which witnesses testified and the court made credibility determinations." In re Official Committee Of Unsecured Creditors for Dornier Aviation (North America), Inc., 453 F.3d 225, 235 (4th Cir. 2006).

The court finds that the bankruptcy court's valuation of the debtor's life estate was consistent with North Carolina law. Further, the bankruptcy court's at-trial credibility determinations are entitled to deference, which is most appropriate where as here the bankruptcy court thoroughly explained the basis of its decision not to fully credit the evidence presented. The court, therefore, affirms the determination of the bankruptcy court concerning use of North Carolina's mortality tables in determining the life expectancy of the life tenant.

### 3. Use of Total Sales Price

Appellant next claims that it was error for the bankruptcy court to value the interests of the respective parties based on the total sales price. He contends that the court should have based its valuation on the what each individual interest would have brought on the open market if each interest were sold separately. Appellant's argument simply rehashes an earlier, unsupported argument that the debtor's interest should have been sold separately from the interests of the remaindermen.

Appellant's citation to In re Cain, 235 B.R. 812 (Bankr. M.D.N.C. 1998) is unavailing: while the bankruptcy court in Cain did value the respective estates separately, it did so in the context of determining debtor's exemption in property, which is not in issue

here. Also, unlike this case, no sale had occurred in <u>Cain</u> and debtor therein was merely a remainderman and did not hold a life estate as did debtor in this case. The issue in <u>Cain</u> was whether the entire property could be sold where debtor did not have a present possessory interest in the home. Perhaps most importantly, in <u>Cain</u>, a sale of all interests would have dispossessed debtor's own mother of her life estate, forcing her to leave her own home; here, the sale of the home only dispossessed the debtor of his present possessory interest.

Appellant argues that each of the interests should have been valued based on sale of those interests separately. Such an argument, once again, ignores the reality that the sale has occurred and that its lawfulness is no longer appealable. In any event, the court has not been provided any case law – and the trial court was not provided with any expert evidence – that would support appellant's theory that selling a life estate and four remainder interests separately would have netted more revenue for the estate than conveying the home in fee simple. To illustrate the absurdity of appellant's argument, if such theory had any validity, no one would ever sell a home by general warranty deed, but would divide all property into multiple present and future estates and then sell those estates separately. As common sense would dictate, home purchasers are not looking to purchase a life estate that would only endure for the span of another person's life, leaving such purchaser with three strangers as tenants in common. Even with the loose mortgage lending practices of the past decade, it is unlikely that a willing buyer of such inferior estates would have been able to finance such a purchase.[1]

Finding that the bankruptcy court's valuation of the interests was properly based on the actual sales price of the home, the court affirms the bankruptcy court's valuation.

---

[1]     As to the homestead subcontention, the court will not address appellant's argument concerning debtor's homestead exemption as appellant lacks standing to assert a claim on behalf of the appellant.

### 4. Other Valuation Issues

#### a. Valuation from Date of Petition

Appellant also takes issue with the bankruptcy court's use of the date of the petition as the date for determining debtor's life expectancy. Such objection is without legal merit as the date of petition is the date from which the assets of the bankruptcy estate are valued. See Boch v. United States (In re Boch), 154 B.R. 647, 655 (Bankr. D. Pa. 1993); In re Hubbard, 135 Bankr. 430, 432 (Bankr. S.D. Fla. 1991); United States v. Zlogar, 126 Bankr. 53, 57-58 (N.D. Ill. 1991); Frengel v. IRS (In re Frengel), 115 Bankr. 569, 572 (Bankr. N.D. Ohio 1989) ("it is now well-settled that a secured creditor's interest in property is determined as of the date of the filing of the petition for relief"); In re National Financial Alternatives, Inc., 96 Bankr. 844, 848 (Bankr. N.D. Ill. 1989); In re Wells, 52 Bankr. 368, 369 (Bankr. E.D. Pa. 1985) ("for purposes of lien avoidance under § 506 the size of the debt and the value of the property are determined as of the date of the filing of the petition"); In re Brager, 39 Bankr. 441, 443 (Bankr. E.D. Pa. 1984), *aff'd*, 49 Bankr. 626 (E.D. Pa. 1985); and Waters v. Money Store (in Re Waters), 276 B.R. 879, 885 (Bankr. D. Ill. 2002).

#### b. Rounding Down Life Expectancy

Appellant also objects to the bankruptcy court rounding *down* the life expectancy of the debtor to the nearest whole year, in this case from 30.2 years to 30 years. Appellant's argument is a non-sequitur inasmuch as rounding down enured to appellant's benefit as it resulted in a larger portion of the proceeds being allocated to the remaindermen. As this was a finding of fact as to debtor's life expectancy, the court will affirm such decision as appellant has not shown it to be clearly erroneous.

### c.     Interest Rate

In calculating the present value of a life estate, Chapter 8-47 of the North Carolina General Statutes requires use of an interest rate of 6%.  It is undisputed that the sale of the property yielded $130,010.00 in gross proceeds and that the bankruptcy court calculated the present cash value of the life estate by multiplying $130,010.00 by 6%, resulting in the annual value of$7,800.60 for the life estate.

Next, the annuity table in Chapter 8-47 provides that the present cash value for a 30 year annuity is $13.765 for each dollar of present value. When the present value of $7,800.00 is multiplied by $13.765, the resulting value of the life estate is $107,375.25.  The total remainder interest was calculated as $22,634.75.

The bankruptcy court then divided the total remainder interest by four (the number of remaindermen) to determine the value of the appellant's one-fourth undivided interest in the

remainder interest. The bankruptcy court determined that value to be $5,658.69. The bankruptcy court further held that the bankruptcy estate had (based on debtors interest in the property) a combined interest worth $113,033.93, which is the value of the life estate plus a one-fourth remainder interest.

Appellant argues that the value of the life estate should have been $0 as there is no value in the life estate because it ended either when the debtor no longer lived in the property, or when the property was sold. Appellant cites no authority in support of his argument.

As discussed above,  the life estate interest plus one-forth remainder interest became property of the bankruptcy estate on February 19, 2004, when the petition was filed.  That debtor was later removed from the home is irrelevant as debtor's interest in the property

became the interest of the estate at the moment he filed his petition. Clearly, the bankruptcy court used the proper method and made the proper calculations in determining the relative values of the interest of the parties based on the total sale price, all in accordance with North Carolina law. As such, the bankruptcy court's findings of fact as to the values of the parties interests were not clearly erroneous and are affirmed.

### 5. Equitable Adjustments

While the bankruptcy court, as earlier discussed, determined not to allow appellant a preference as to his administrative claims, the bankruptcy court did ultimately value those claims in equity. In equity, a bankruptcy court may choose the way in which claims will be allocated to promote efficiency and just administration of the bankruptcy estate. Pepper v. Litton, 308 U.S. 295, 304 (1939).

Specifically, the bankruptcy court found that the amounts paid by the appellant to reduce the mortgage on the residence, for wildlife control, and for roof repairs should be reimbursed, even though they did not qualify as administrative expenses. The expenses for wildlife control and roof repairs were found to be $509.60 and $140.00. The court was unable, however, to determine the amount of the principal reduction resulting from the Appellant's mortgage payments. The Court therefore estimated the amount as one-half of the total payments.

When the bankruptcy court estimated the principal reduction, it mistakenly read the exhibit in that it found appellant had made $2,363.38 in total payments, attributing $1,181.69 to principal. In actuality, the exhibit reflected the estimated reduction in principal resulting from the payments of appellant. Thus, the bankruptcy court should have allowed appellant an equitable allowance of $2,363.38 rather than $1,181.69 for the reduction in mortgage

principal, making that particular conclusion "clearly erroneous." The decision of the bankruptcy court will be reversed accordingly.

Appellant further argues that the bankruptcy court should have equitably allowed him expenses of $11,577.76, which would have included the total amount of the mortgage payments he made. As discussed above in the context of the bankruptcy court's denial of appellant's administrative claim, such amount is comprised mostly of mortgage interest incurred due to delays caused by appellant's interference with the administration of the bankruptcy estate and court orders. Thus, there is no error in the bankruptcy court's exercise of its discretion to decline to equitably reimburse expenses that were incurred in defiance of efficient administration of the bankruptcy court. "Equitable determinations by the Bankruptcy Court are subject to review under an abuse of discretion standard." In re General Dev. Corp., 84 F.3d 1364, 1367 (11th Cir.1996). Such determination is affirmed as there is no abuse of discretion in the bankruptcy court's equitable conclusions.

## VI. Conclusion

With the exception of the equitable adjustment for principal, the bankruptcy court's findings of fact are not clearly erroneous. Further, *de novo* review of the bankruptcy court's legal conclusions reveals that they are consistent with both federal and state law. With the exception of the factual finding that the mortgage had been reduced by $1,181.69 rather than $2,363.38, the judgment of the bankruptcy court will be affirmed and the appeal dismissed.

In light of the foregoing, the decision of the bankruptcy court is

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** as herein provided.

## **Advice of Appellate Rights**

In accordance with  Wilder v. Chairman of the Central Classification Bd., 926 F.2d 367, 371 (4th Cir.)("while not mandated, the preferable practice is to include a statement to all final orders involving *pro se* litigants setting forth the litigants' appellate rights"), cert. denied, 502 U.S. 832 (1991), appellant is hereby advised of the right to appeal this decision to the Court of Appeals of the Fourth Circuit in the manner described in Rule 3, Federal Rules of Appellate Procedure, by filing a Notice of Appeal with the Clerk of this Court within the time prescribed in Rule 4, Federal Rules of Appellate Procedure, which is **30 days** from entry of this Order.  Failure to file a Notice of Appeal within the first 30-day period after entry of judgment requires the filing of a motion for extension of time and a notice of appeal within the second 30-day period after entry of judgment. Fed. R. App. P. 4(a)(5).  See United States ex rel. Leonard v. O'Leary, 788 F.2d 1238, 1240 (7th Cir. 1986).

Signed: August 2, 2011

Max O. Cogburn Jr.
United States District Judge